CASE *No. 912.

CRANE, BOYLSTON & CO. v. MOSES.

1. Where a creditor obtained judgment against the executor of his debtor, and then instituted a creditor's action, setting forth his judgment in the complaint, upon which an injunction was issued, and the answers did not deny the indebtedness, and the judgment was proved at the hearing— *Held*, that the claim was sufficiently established.  This case distinguished from *Westfield* v. *Westfield, ante p.* 482.
2. Executors who, after having duly advertised for creditors, and having no knowledge of outstanding debts, pay legacies more than two years after testator's death, are not guilty of a *devastavit*.
3. Executors having no knowledge of a debt due by their testator, are not chargeable, with notice of such debt from papers in their possession as executors.
4. A creditor has no cause of complaint, if executors turn over pecuniary legacies to those who are entitled to hold for life only, upon the unsealed releases of the remaindermen.
5. A surety upon a bond conditioned to hold negroes upon certain trusts, cannot be charged with a balance due by the trustee, as stated in his returns on file in the proper office; the breach must be judicially declared in action against the principal, and upon this subject the surety has a right to be heard.
6. A trustee having received confederate money in June, 1863, deposited it upon interest with bankers of high standing, and entered the Confederate army soon afterwards and died in March, 1864, and the bankers failed soon after the war—*Held*, that the trustee was not liable for the loss.
7. A trustee having received money for the trust estate in 1860 and 1861,

* This case and the two cases following, are inserted out of their place in the order of filing, so as to complete, in this volume, the cases of November Term, 1879.

2 N

deposited it upon interest, with his individual funds, with bankers of high standing, and died in 1864, and the money was lost by the failure of the bankers after the war—*Held*, that he was not liable. McIver, A. J., *dissenting*.

Before HUDSON, J., Sumter, September, 1879.

The questions brought up by this appeal relate to claims of creditors of the estate of one deceased. The nature of those claims are fully stated in the opinion of the court, it being proper to add only, that the moneys received by Phillips, as trustee for Rose B. Quinn, were as follows: $4681.54, in January, 1860, and $1254.95, in February, 1861; and that the remaindermen, in 1866, by a paper not under seal, directed the executors to turn over to Emily and Ellen Phillips, the moneys and other property left to those ladies for life by the will of N. Phillips, releasing the executors from all liability for so doing, and agreeing to look only to the life tenants for their interests in remainder. All other matters are fully stated in the Circuit decree, which is as follows:

The plaintiffs obtained judgment against F. J. Moses and M. Moses, executors of the last will and testament of N. Phillips, deceased, on October 11th, 1871, for the sum of $1566.31 principal, besides interest and costs. *Fi. fa.* was issued on the said judgment (which was the result of a trial by jury and verdict rendered in regular term time), and lodged with the sheriff of Sumter county on October 19th, 1871. A certified copy of said judgment was duly lodged in the clerk's office of Marion, and execution issued thereon. Levy was made on certain lands of the said N. Phillips, deceased, in the said county of Marion, but no sale was made thereof, by reason of some order restraining the sheriff, obtained in some manner not now made known to the court; but which must have been irregular, since it appears that no notice thereof was ever given to the plaintiffs or to the executors of Phillips, and no legal proceedings have ever been taken on which said order could have been granted. The plaintiffs then filed the complaint in this action, and obtained an order of injunction in the usual form on March 12th, 1872, which order provided, in the third clause thereof, that all persons having any

claims against the estate of the said N. Phillips do file and prove such claims under these proceedings. The executors were also called and required to account for their administration of the said estate, and suing creditors restrained from further proceedings, except under this case.

On May 19th, 1873, an order was taken out in the cause, extending the time for creditors to prove their demands until January 1st, 1874. The judge of Probate of Sumter county was ordered to take and state the account of the executors, and the issues, both of law and fact, were referred to him. The defendants (executors of N. Phillips) were both upon the bench at that time, and no accounting was had.

On January 18th, 1877, an order was obtained in the said cause transferring the reference to the judge of Probate of Marion county, with the powers and duties of referee as above. The judge of Probate of Marion county undertook to assume the entire disposition of the subject matter of the suit, holding that the Court of Common Pleas for Sumter county was without jurisdiction over the cause; and in accordance with the view, he entertained a petition of one Richard Jordan against F. J. Moses and M. Moses (which petition was filed on January 9th, 1877,) for an account from the executors and sale of the real estate of the said N. Phillips, etc. On August 2d, 1877, the said judge of Probate, John Wilcox, filed his decree upon the petition of the said Richard Jordan, who styled himself trustee for the estate of Rose B. Quinn and Margaret McNeill. An appeal was then taken from this judgment to the Court of Common Pleas for the county of Marion, and on November 5th, 1877, the whole proceedings were set aside and quashed by the judgment of the Hon. A. J. Shaw, who held that the said Court of Probate had no jurisdiction over the subject matter, by reason of the pendency of this action in the Common Pleas for Sumter county; in which county both executors resided at the time this action was commenced. An appeal was taken from this judgment of Hon. A. J. Shaw, and he was sustained by the Supreme Court and his judgment confirmed. 10 *S. C.* 431. Thereupon the said John Wilcox, judge of Probate for Marion county, filed a copy of his judgment above referred to, as his report under the authority of the order of ref-

erence, made to him in this cause on January 18th, 1877, here-inbefore referred to. Counsel for plaintiffs and defendants in this cause both excepted to this report, and on March 30th, 1878, his Honor, Judge Pressley, made his order in the cause, after hear-ing argument from all parties, whereby he rescinded all the former orders of reference in the cause, and ordered that neither the said report of the judge of Probate of Marion county, nor any of the papers or testimony accompanying the same, be held as part of the proceedings in this cause; also referring the issues of law and fact in the cause to T. B. Fraser, Esq., who was also instructed to take and state the account of Montgomery Moses, as executor of N. Phillips, deceased—his co-executor, F. J. Moses, having died pending this action. The Hon. T. B. Fraser having been elected judge before the reference was held, an order was made on January 15th, 1879, by his Honor, Judge Mackey, whereby he rescinded so much of the order made by his Honor, Judge Pressley, as appointed T. B. Fraser, Esq., referee, and all issues of law and fact in the cause were referred to Charles May-rant, Esq., master in equity for Sumter county, who held refer-ences—on September 8th, 1879, filed his report; and this cause came on to be heard before me on exceptions filed to the report of the said Charles Mayrant, Esq., master in equity for Sumter county.

To the proper understanding of the issues involved, it may be proper to state a few facts, as collected from the evidence sub-mitted.

N. Phillips died March 4th, 1864. His executors named in his will were F. J. Moses and M. Moses. M. Moses seems to have acted mainly in the management of the estate. Legal ad-vertisement was made by the executors very soon after the death of N. Phillips in 1864. None of the creditors now before the court gave notice of any claims. The plaintiffs obtained judg-ment against the executors October 11th, 1871. As before stated, December 4th, 1871, they sold, by the sheriff of Sumter county, the law library and some parlor furniture under their execution, which brought a small sum. The plaintiffs com-menced this action for the settlement of the estate on March 11th, 1872. C. C. Law had then brought suit on a note, said to have

been lost, and which was made to one R. B. Fladger, and due on November 15th, 1863. No notice was given and no action taken on the claims said to be due to the estates of Rose B. Quinn and Margaret McNeill, until the year 1877.

The plaintiffs, Crane, Boylston & Co., except to the report of the referee (master):

*First.* Because the master has found, as matter of law, " that the liability of Fairlee having been established and in no way discharged, by payment or otherwise, it subsisted against the surety, Phillips, at the time of his death, consequently against his executors as a specialty debt." These words are quoted from the master's report. In the testimony reported it is difficult to perceive how the master has reached the conclusion that the liability of Fairlee had been established and in no way discharged by payment or otherwise. In fact, there seemed to have been no evidence of any effort to collect the sums which are claimed to have been due by Fairlee, either from him or his estate, which, it is shown, has been under settlement in the court of equity for Marion county for a number of years past.

Before the estate of Phillips can be properly charged with the debt of Fairlee, it will be both proper and necessary that proof be made before the master that the liability of Fairlee existed at the date of the reference, and had not been paid or discharged, either in whole or in part, and this proof must be made by the party who brings forward the claim and seeks to establish it under these proceedings. It would be a proper part of such proof to show that the demand had been established against the estate of the principal debtor, now in the course of settlement in the court of equity, and that no part of the same has been paid. The plaintiffs in this action have but one fund out of which they can be paid, to wit, the estate of Phillips; the creditors of Fairlee, upon his trusteeship, have two or more funds—those of the principal debtor and those of his two sureties, severally.

It is a well established rule of equity, that when one creditor has two or more funds out of which he can be paid, and the other creditor has but one, the first shall proceed first to exhaust that fund upon which he alone has a claim, before proceeding against the other, in which both are interested. In the absence

of sufficient evidence as to this claim, I deem it best and safest to re-commit it to the master, with instructions to have further testimony taken upon it. The creditor plaintiffs, as well as the executor, who is before the court, insist that before the estate of Phillips can be properly charged with a breach of the trust bond of Fairlee, there must have been an account had against the principal and a decree made against him. In *Lining, Ordinary,* v. *Giles,* 2 *Tread. Const. R.* 20, it is held that a surety to bond of administrator cannot be held liable until the administrator is cited and decree made. See, also, *Ordinary* v. *Williams.,* 1 *N. & McC.* 587 ; *Ordinary* v. *Powers,* 2 *N. & McC.* 213 ; *Anderson* v. *Maddock,* 3 *McC.* 237 ; *Harrington* v. *Cole,* 3 *McC.* 509.

There is proof before the master that the estate of Fairlee is now before the court of equity, and that assets will come into the hands of his executors at the death of a Mrs. Shaffer, if there be none now ; and there is no proof that this demand or claim has ever ever been rendered in as against his estate. For these reasons, so much of the report as is covered by the first exception of the plaintiffs must be referred back to the master for further testimony, and an additional report thereon.

The second exception of the plaintiffs charges error, both of law and fact, in this, " that the master has found as matter of law that the liability of Phillips, established by his own returns, has not been discharged, but that having retained the money, or deposited it along with his own, the question of imprudent or prudent investments or deposit does not pertain to the case, but that he was liable at the time of his death for the balance charged against him, as a specialty debt, consequently his executors, so far as they had assets, to the estates of McNeill and Quinn." In the report of the master just previous to the ruling above quoted, are to be found the following words : " The only facts testified to by the defence, for the purpose of discharging Phillips from this indebtedness, are those of his investments in Confederate bonds and his deposit with Kirkpatrick." " It is shown by the affidavit of Kirkpatrick that a considerable amount of money ($8182.79) was at Phillips' credit on July 1st, 1863, besides which he had invested $5000 in Confederate bonds. Indeed, I do not understand this to be disputed." Then fol-

lows the conclusion to which exception has been taken, as stated above. It will thus be seen that in the opinion of the master, if a trustee retains money, or deposits it along with his own, no matter under what circumstances, no question of prudent or imprudent investment or deposit can be made. For example : if the master be correct, a trustee who had received for his *cestui que trust* £1000 sterling, and at the same time had on hand £100 of his own money, and who deposited both funds in the Bank of England until a safe investment could be found, would be liable to his *cestui que trust* if the bank should fail, provided the two funds had not been separated in some manner. I cannot assent to this proposition to the extent to which it is carried by the master.

Let us see what are the facts of the case at bar. And first, as to the estate of McNeill. There was but one fund collected for that estate by Phillips, the deceased trustee. That was the sum of $1800, received by him in Confederate currency, on June 20th, 1863. No blame is attached to him, either in evidence or argument, for having received that sum in the currency named. It is shown that on the next day he invested a large sum in bonds of the Confederate government; and that his cash book being in evidence, and his correctness of habits admitted, the sum so received must have been included in such investment, for the reason that he did not have sufficient for such purchase without including therein the sum collected for the estate of McNeill, as stated above. Nor did he draw from Kirkpatrick (who were his bankers)—and with whom he deposited all of his funds, whether his own or held by him as attorney or trustee—the sum to make such investment in Confederate bonds, or any part thereof. It is clear, that unless the sum of $1800 was so invested, it must have been retained in the currency in which it was received. If it was so held—if it had remained in his possession from June, 1863, until his death in the following spring of 1864—he would not be liable to his *cestui que trust* for its subsequent loss, a reasonable time being allowed him to invest. If invested in the bonds named, with no ear-mark or positive proof that such investment (if made) was for the use and benefit of the estate of McNeill,

the law ·would have protected him from liability for the loss thereof.

Now, as to the estate of Rose B. Quinn. In this estate Phillips received the bulk of the fund in the year 1860. It is shown by his cash book and by the account of J. & J. D. Kirkpatrick, his bankers, that the money was sent to them and deposited with them at seven per cent. interest, subject to his check and in his own name ; that it was not separated from his other deposits, but went to the general credit of his account. It is shown that for five years he had deposited all his own funds with those gentlemen, who were factors of the city of Charleston of high standing and credit, and that he had, in that period, had large sums of money in their hands. Was this deposit of these trust funds a breach of trust ? The law allowed him a reasonable time in which to make an investment. Where were the funds to remain in the meantime ? It is a matter of public history that at that period all the banks of the state were in a condition of suspension of specie payments. After a year had passed, when the duty of the trustee to make a proper investment would have existed, the state was convulsed by war, and no more prudent course was open to Phillips than to leave the fund in the place of deposit in which it had been first lodged, until the return of peace might enable him to secure a safe investment. Before that time arrived he was dead, and the house in whose hands he had placed these funds survived that catastrophe which involved every bank in the state. The house of Kirkpatrick was a banking-house for the deceased, Phillips ; they received deposits, allowed seven per cent. interest, and permitted checks to be drawn on them. It is shown by the testimony of C. H. Simonton that they were in good credit up to 1868, when the executor obtained judgment against them. On March 11th, 1871, they took the benefit of the bankrupt act, and the debt was lost. It is also shown by the evidence that in 1863, Phillips was drafted into the second class of reserves of the Confederate army. That he made his will at that time, and that he required his bankers and factors to purchase for him $5000 of Confederate states bonds. That these bonds were found after his death among his personal assets. That this was

about the sum that would be due to the estate of Rose B. Quinn.
That the state and Confederate government had both made the
purchase of these bonds legal on the part of the trustees. The
true rule is, that in all cases in which the fiduciary relations
exists, the law requires the exercise of *bona fides* and discretion
on the part of those who have the interest of others in their
charge. Prudence and good faith are demanded; and where
these appear, from all the circumstances of a case, equity will
not enforce penalties upon those who have been unfortunate
without fault. The rule that a trustee must not mix up the
funds of his *cestui que trust* with his own, is one which arises
from the custom of some fiduciaries to use trust funds for their
own purposes; to speculate with them, to put them in their own
business or trade, with a view to making profit therefrom. In
all such cases, the trustee is held liable for the loss, if loss ensue.
But it by no means follows that a trustee who deposits his trust
funds and his own in the same place of safe deposit, and does
not withdraw or use the trust funds so deposited, or reap there-
from any gain, would be held liable for a loss which should
result from no imprudence on his part, either in making the first
deposit, or afterwards in not removing it, provided that his good
faith is clear, and his prudence and discretion apparent.

Under the facts of this case, I am constrained to sustain the
exceptions of the plaintiffs to the ruling of the master, and to
hold that the estate of Phillips is not liable for the loss of the
funds of either the estate of McNeill or Rose B. Quinn. The
true rule is, that a trustee is answerable only for losses resulting
from acts or omissions, such as a prudent man could not do, or
omit, in his own affairs. *Taveau* v. *Ball*, 1 *McC. Ch.* 464;
*Bryan* v. *Mulligan*, 2 *Hill's Ch.* 36; *Glover* v. *Glover*, *McM. Eq.*
153; *O'Dell* v. *Young*, *Ib.* 155; *Rowth* v. *Howell*, 3 *Ves.* 565;
*Powell* v. *Evans*, 5 *Ves.* 839, show that a trustee or executor
should manage funds committed to his care with the same care
and diligence that a prudent man would bestow on his own con-
cerns. In the case of *Rowth* v. *Howell* it was held that the
executor was justified in employing the customary means of
safely keeping funds in his hands, and the trust funds having
been lost by the failure of the banker with whom they were

deposited, the executor was free from responsibility, not having been charged or being chargeable with any want of due care. See also *Boggs* v. *Adger*, 4 *Rich. Eq.* 408. In *Nance* v. *Nance*, 1 *S. C.* 209, the court uses this language, referring to the fifth ground of appeal : " This proposition is not distinctly stated, but amounts to a claim that the investment made by a trustee for the joint account of two wards, without distinguishing their several interest in the same, are for this reason to be disallowed. We know of no principle from which such a conclusion can be deduced. If the estate has sustained a loss for any such reason, and that loss can be traced to culpable negligence on the part of the trustee, such a state of facts should be presented directly. It cannot be made out argumentatively in the absence of such a statement." In *Twitty* v. *Houser*, 7 *S. C.* 164, effort was made to charge the administrator with the loss of a fund, by him deposited in the Citizens' Savings Bank branch at Orangeburg. The court held that he was not liable for such loss, and use the following language : " To make the administrator liable for loss which followed from no fault on his part, would inflict on him a punishment for not foreseeing what others, having better opportunities, failed to perceive in time to save them from a consequent loss. And again, the proper inquiry is, was the act of the administrator, under the circumstances, induced by that reasonable care with which prudent men, looking to their own benefit, usually conduct their own business ?"

In *Fitzsimmons* v. *Fitzsimmons*, 1 *S. C.* 413, the court say : " The sixth ground of appeal objects to the allowance of the credit to the defendant for a deposit in the Palmetto Savings Institution of the funds of the estate. This institution appears to have been in good standing until about the close of the war, when it became insolvent. It appears by the account stated by the master, that the administratrix was credited March 2d, 1860, with a check for the amount deposited in the savings institution." The court disallowed the exception taken, and discharged the defendants from payment even of interest on the annual balances. The court say, on page 414 : " It does not appear that the administratrix received actual payment by way of interest on the savings deposit, and it must be assumed, as the

case stands, that the interest was, from time to time, credited by the bank on account, and that the accumulations of interest have been lost, with the rest of the deposit, by the failure of the institution. The complainant therefore is not entitled to the allowance of interest, forming the second ground of appeal." In *Mayer* v. *Mordecai*, 1 *S. C.* 394, the chief justice says : "When a trustee is not limited or directed by the instrument under which he acts, and is left to the discretion of his own judgment, our cases hold, that his discretion must be exercised with the same care and diligence that a prudent man would bestow on his own concerns." And again, on same page : "The principle which is to be extracted from the cases in this state consists with what is said in *Hovenden on Frauds* 486. "He is bound to manage the property for the benefit of the *cestui que trust* with the care and diligence of a prudent man. What will constitute care and diligence thus exacted will depend on the attendant circumstances."

In *West* v. *Cauthen*, 9 *S. C.* 60, the court say : "It appears that the executor converted the Confederate currency in his hands, belonging to the estate of his testator, into interest bearing Confederate notes. The decision of this court in *Hinton* v. *Kennedy*, 3 *S. C.* 459, was in a case precisely parallel to the present, as it regards the claim under consideration. In accordance with that case, we must hold that the executor was guilty of no breach of the trust on such a change of securities. It fully appears that the entire estate, subject to the payment of the legacy to Milly West, was lost through the depreciation of Confederate securities. As it is not made to appear that the executor was at fault in retaining in his hands such securities down to the time when, by the course of public events, they became valueless, there is no ground for maintaining the complaint. The decrees of the Circuit Court and Probate Court must be set aside and the complaint dismissed."

Was the conduct of Phillips in sending the funds of the estate of Rose B. Quinn to his bankers, J. & J. D. Kirkpatrick, and placing them there on deposit, a prudent and proper act, under the circumstances surrounding him at the time ? I think it was, nor can I perceive any breach of trust in his leaving them there ;

when the state of the country is taken into consideration, as it existed at the end of the year, which is allowed him, in which to find investments. In accordance with these principles—

It is adjudged and decreed that the estate of Phillips is not liable for the amount of $1800 received from Fairlee's executors on June 20th, 1863, in Confederate currency for account of the estate of Margaret McNeill, and this conclusion is reached without reference to the question of investment in Confederate bonds, since the court is of opinion that if no such investment was made and the money was merely kept on hand, or left with Kirkpatrick and subsequently lost, in neither event has there been shown that want of care and prudence which would render the estate of Phillips liable to pay to the estate of McNeill such sum or any part thereof.

It is further decreed that the estate of Phillips is not liable for the loss of the funds received by him for the estate of Rose B. Quinn—the deposit with J. & J. D. Kirkpatrick of said funds being regarded as the act of a prudent man, and certainly as no breach of trust; and the subsequent failure of the house of Kirkpatrick in 1871, was not in any way evidence of their not having been fully responsible in 1860, when such deposit was made. There is evidence that in 1863, Phillips was drafted in the reserves of the Confederate army; that he caused his bankers, J. & J. D. Kirkpatrick, to invest $5000 in Confederate eight per cent. bonds, which bonds were found with his assets on hand after his death. It is contended on the part of the plaintiffs that these bonds represented the Rose B. Quinn estate. There is no positive proof that said bonds were purchased for the said estate. They were not marked in any way to designate such purpose. The similarity in the amount purchased and held to the amount due that estate, together with the fact that such investments were sanctioned by the law, are relied on as evidence to prove that they were so intended. It is also in evidence that Phillips did not invest his own funds in such bonds, as he had not much faith in them, and it is contended that this is another proof that the bonds held were as a protection to himself against the balance reported by him as being due said estate. It will not be necessary for me to decide this question, because I hold

that as it is not denied that the funds of the estate of Quinn were remitted to and deposited with Kirkpatrick when received, the estate of Phillips is not liable for the loss thereof by the subsequent failure of Kirkpatrick, even if the funds were not invested in the bonds named; *a fortiori* said estate was not liable if so invested.

The executor excepts to the report because, he says, that the master has erred in charging the said executor with the value of the law library and furniture sold by the sheriff, and also because the master has not given credit to the said executor for the sums paid by him to Ellen and Emily Phillips, legatees under the will of the testator. It is not denied that the executors duly advertised for creditors, and that payments to the Misses Phillips were only made two years after the death of the testator. The authorities seem to be clear upon the duty of persons having demands upon an estate to make known such demands within the time allowed by the statute in which it is made the duty of executors to settle the estate. No exception is made in favor of minors, nor of other persons under disabilities. It is in evidence that none of the demands now set up under these proceedings were put in suit or brought to the attention of the executors until after the payments of the legacies had been made, although Margaret McNeill, as heir of her deceased children, was fully able to have made her demands at any time from the death of Phillips. It is contended that whilst no actual notice of the demands now made was given to executors, the possession of certain books of deceased and of a bond which was due the estate of Rose B. Quinn, were sufficient constructive notice to the said executors of the demands set up under these proceedings in favor of Rose B. Quinn's estate and that of Margaret McNeill. It is stated positively by the executor that he had no notice of these demands until 1876, ten years after the legacies had been paid by him. It is no where shown that the memorandum book or other evidences of those demands were known to the executors before the legacies were paid in 1866. The bond referred to bore no ear-mark of belonging to the estate of Quinn. It was assigned to N. Phillips, and nothing on its face showed that it

belonged to any other person. It was in the hands of Dozier for suit, and was assigned to Jordan, trustee, after the present action was brought.

Was it the duty of the executors to hunt up these claimants, or their duty to seek them? Let us see what the act says, (5 *Stat. at Large* 111): " That every executor or administrator shall give three weeks' notice by advertisement in the state gazette, or at three different places of most public resort in the parish or county for creditors to render an account of their demands, and they shall be allowed twelve months to ascertain the debts due to and from the deceased, to be computed from the probate of the will or granting letters of administration; and creditors neglecting to give a statement of their debts within the time aforesaid, the executors or administrators shall not be liable to make good the same." See, also, *Sebring* v. *Keith*, 2 *Hill* 340. An administrator, as against a creditor who has not rendered a statement of his debt within the time directed by law, is entitled to retain for his whole debt, if the assets are sufficient to pay all. See, also, *Adam Walker* v. *Sam. Gill, Adm'r*, 2 *Bail.* 105. A creditor having notice of the death of his debtor, and of the grant of administration, is bound to render a statement of his demand in twelve months, although the administrator may have neglected to advertise for creditors to render in a statement of their demands conformably to law.

It is contended that because the records show that Phillips was appointed trustee of the estates, such was constructive notice to the executor of this indebtedness. The conclusion does not necessarily follow the premises. I am therefore brought to the conclusion that the executor is entitled to credit on his account for the sums paid to Ellen and Emily Phillips, legatees of the testator, and

It is ordered and adjudged that the account of the executors be remanded to the master; that he allow credit thereon for the legacies paid to the aforesaid legatees; and that the value of the law library and furniture be stricken from the accounts, as I am of the opinion that the executor is not responsible for the low price which they brought at a public sale by sheriff under execution.

The claimant Jordan also excepts to the report of the master, because he has allowed the claim of the plaintiffs, without their oath being attached thereto. And, also, because he has allowed the claim of M. Iseman, when, as he insists, the proof before the master was that the claim was paid, or, if not paid, that the statute of limitations would apply thereto and bar the same. These questions were not seriously urged at the argument, as they seemed to be regarded as of minor importance. With reference to the claim of the plaintiffs, it would seem that if they had not a demand against the estate of Phillips, these entire proceedings would have to be dismissed, as the plaintiffs would be without right of action, since their status would be taken away, for this action is one which they only can take, being creditors of the estate which the complaint is filed to settle. Without doubt the defendant executor would cheerfully accede to this view, and the whole proceedings would fall through.

The plaintiffs set up in their complaint the judgment against the executor, and exhibit to the master the verdict of a jury in the case, followed by their judgment and the writ of execution, which shows the amount now due to the plaintiffs. In the opinion of the court the record of the judgment was proof of the debt, and the execution of the sum due. The case may be different if the judgment was against the testator, for such judgment might have been paid or satisfied, in whole or in part, without such payment being known to the parties in this cause. In the case at bar, if the demand of the plaintiffs was disputed, the defendants could have denied it in their answer, and had their day to disprove it in court. I am of the opinion that the judgment against the executors established the debt. See *Van Wyck* v. *Norris*, 6 *S. C.* 305. As the whole matter must be referred back to the master, the plaintiffs may, if they deem it proper, supplement the proof of their judgment by the filing of an affidavit, showing the amount now due and unpaid on their judgment.

With reference to the small claim of Iseman, I find no proof made before the master and referred to by him. But such proof must have appeared, because the master reports in favor of the claim. I will therefore refer this claim back to the master, with instructions to report the proof made upon it, and with leave to

claimant to supplement such proof with any that he may be advised is necessary thereto.

The creditor, Richard Jordan, trustee of Rose B. Quinn and Margaret McNeil, and administrator and guardian of children of Mrs. McNeill, appealed upon the grounds considered by the court.

*Messrs. Walsh & Evans,* for appellants.

*Messrs. Moise & Lee,* for plaintiffs.

*Mr. W. W. Harllee,* for the executor.

September 1st, 1880.   The opinion of the court was delivered by

McGOWAN, A. J.   This was a complaint in the nature of a creditor's bill to marshal the assets of the estate of Napthili Phillips, deceased, against F. J. Moses and M. Moses, executors, the legatees, and C. C. Law and other creditors.   Phillips, the testator, died in March, 1864, leaving a will.   He died in Marion county, where he lived, and where his property was situated, but the executors lived in Sumter county, where these proceedings were instituted.

The history of the litigation, including a claim of exclusive jurisdiction in Marion county, would be long, but all the facts are so fully and clearly set forth in the Circuit decree that it will not be necessary to re-state them here.   The plaintiffs are judgment creditors, having obtained their judgment in 1871, against the executors upon a demand due by Phillips in his lifetime. They levied and sold personal property of small value—law library, furniture, &c.—but, finding obstacles in the way of collecting their debt, they filed this complaint in 1872 for an account against the executors, to sell land, pay debts, and to marshal the assets.   The questions were referred to a referee, who stated the account and reported in favor of certain other claims presented.   The Circuit Court rendered a decree, and the case comes up on exceptions.

One of the exceptions makes the point that the judgment of

the plaintiffs was not sufficiently proved for lack of an affidavit of plaintiffs as to the amount due. This is the claim upon which the complaint (which, as it asked for an injunction, must be presumed to have been sworn to,) is based, and if the objection is well taken the whole proceeding must fall to the ground. There is no allegation that the debt is not due, nor is it denied that it has gone into judgment against the executors, but the objection is that, as matter of proof, the claim was not *established by affidavit*, which it is insisted was necessary. This court has lately held, in the case of *Westfield* v. *Westfield, ante p.* 482, that " a creditor presenting his claim to the commissioner or master, under notice, should make an affidavit of the debt, and that he is aware of no discount," &c. ; but the practice indicated in that case was intended to protect the estate of an insolvent debtor against claims presented under the call for creditors, and does not necessarily include the demand upon which the proceeding is instituted, especially when that is a judgment entered upon the verdict of a jury. This claim of plaintiff was specifically set forth in the pleadings. The complaint, which, as we have seen, must be presumed to have been sworn to, charged that there was such a judgment, and set forth particularly the amount of it. The answers did not deny the statement, and, therefore, by the rule of the code, without further proof, " it must be taken as true." Besides, both the referee and the Circuit judge held that there was sufficient proof of the judgment which was obtained against the executors after the death of the testator. This exception is overruled.

In reference to the exception as to the alleged *devastavit* of the executors in paying legacies to Ellen and Emily Phillips, leaving debts unpaid, the general facts are as follows : " The testator died in 1864, having given his entire property to his executors in trust for his sisters, Ellen and Emily, during their lives, and the survivor of them, and after the death of both of them then over to his surviving brothers and sisters. The testator seems to have considered that he owed no debts, as his will makes no reference to debts ; but that omission could not excuse the executors as to their first duty of providing for creditors. The executors qualified immediately, M. Moses, March 11th,

2 o

1864, and F. J. Moses, April 1st, 1864, and advertised according to law for creditors to present their demands. It seems that no claim was presented, and the executors, having assets in hand, made payments to the legatees, as follows : To Ellen and Emily Phillips, $2500 ; to same, September 29th, 1866, $1500 ; to same, December 20th, 1866, $1990 ; to Henry M. Phillips, December 2d, 1867, $1000 ; and to Ellen and Emily Phillips, May 14th, 1869, $1000, making the aggregate sum of $7990. At that time the assets were ample for the payment of any debts of which they had knowledge or which were likely to come against the estate. The judgment of plaintiffs was not recovered until 1871, and this suit was not instituted until 1872. Were these payments wrongfully made, and should the executors be required to account for the same as assets to pay creditors whose claims have since come to light? No question is here made as to the right of the creditors to pursue the legatees who received the money. We have only to consider whether, in making such payments, the executors committed a *devastavit,* and are liable to account for the same. The law allowed the executors twelve months, reckoning from the probate of will, to ascertain the debts due by the testator. Within that time they were required to give three weeks' notice, by advertisement, for creditors to present their demands duly attested. "If any creditor shall neglect to give in a statement of his debt within the time aforesaid, the executors or administrators shall not be liable to make good the same." *Gen. Stat.* 457. The proof shows that when they made the payments, no claim of any creditors had been made, although the notice had been given, and several years had elapsed before the first payment was made. We think the executors are not liable for the legacies paid, and the account should be corrected accordingly. If the executors were now sued on their legal liability as the personal representatives of the testator, the plea of "*plene administravit*" could be maintained to the extent of these payments. *Walker* v. *Gill,* 2 *Bail.* 105 ; *Sebring* v. *Keith,* 2 *Hill* 340 ; *Lanier* v. *Griffin,* 11 *S. C.* 581.

The executors would be liable if they paid legacies with a knowledge of outstanding debts, even if those debts had not been

rendered under the act; and it is insisted that these executors had at least constructive notice of the trust claims represented by Jordan, trustee. It is said that, as executor, they had possession of the papers of Phillips, from which they might have ascertained the existence of at least the alleged trust debts. It is more than doubtful whether they could have done so from the papers in the possession of Phillips. If they saw the cash book and papers referred to, they might well have supposed that the account had been discharged by investment, as now claimed, or in some other way, especially as no claim in reference thereto had been intimated to them. But, be that as it may, the surviving executor states positively that the executors had no knowledge of these claims until years after the payment. It is not the duty of executors to hunt up doubtful claims against the estate which they represent. The law makes it their duty to advertise for creditors, and, when presented, to make provision for their payment, but it makes it the duty of the creditors themselves to present their claims duly attested.

It is further urged that as the legacies to Ellen and Emily were for life only, with limitation over, the executors had no right to pay them more than the interest, reserving the corpus for the remaindermen, and that the release which the remaindermen executed of all their interest, not being under seal, *was void.* Assuming that some such question might possibly arise between executors and beneficiaries under the will, it is not perceived that it touches the point under consideration here. This exception is overruled.

Under the call for creditors, made in the proceedings in this case, Richard Jordan, as trustee, guardian and administrator, presented these claims against the estate, which he insists are valid bond debts, and entitled to priority as such. If these claims are established they will absorb all the assets which remain. They are as follows:

*First.* One George M. Fairlee was appointed trustee in regard to certain negro slaves belonging to Mrs. Margaret E. McNeill and her children, and gave bond July 21st, 1860, to C. D. Evans, Esq., then commissioner in equity for Marion county, in the penal sum of $8000, *conditioned* for the performance of cer-

tain duties as such trustee, and upon this bond N. Phillips and Elly Godbold were sureties. Fairlee died in 1862. It is said his estate is being settled in the court, but neither his personal representatives nor any one interested in his estate are parties in this case. The referee could take no account of the estate of Fairlee or his liability as trustee, yet he charged as a bond debt against the estate of Phillips, one of the sureties, the whole amount claimed to be due by Fairlee, trustee, as taken from his returns, viz., $4067.95. The Circuit judge ordered the claim to be recommitted, and the creditor excepts.

It is doubtful whether that part of the decree which ordered the claim recommitted is appealable, but as it has been earnestly argued, and will have to be considered below, we will entertain it. The obligation on which the claim is founded is not an ordinary money bond, in which the terms are, we or either of us promise to pay a certain sum of money, but an official bond for the performance of certain acts. "Now the condition of the above obligation is such, that if the above bound George M. Fairlee shall hold the property (negroes) upon the trusts as above described, &c.,    *    *    *    then this obligation to be void and of none effect, otherwise to remain in full force and virtue," &c. The penalty is for a sum certain, but that is not to be paid as such, but was only intended to secure the performance of the covenants. The sureties promised to pay no sum of money, but that their principal would perform the duties specified in the bond, or, if not, that they would pay the *damages* which might result from his failure to do so. That is the extent of the undertaking of the sureties, who are in no way responsible until it appears that the principal had failed to perform the duties he had assumed. Originally it was held, in this state, that a surety upon an administration bond could not be sued until a breach of the bond had been shown; until the principal had been held to account, had been found to be in default, and had failed to pay the judgment. " Sureties on administration bonds are in no respect to be considered as trustees or accountable in this court (equity) as such. They are only parties to a law undertaking, and to be held responsible in damages for the default of their principal. They can be sued only after default of their principal

has been established." *McBee* v. *Crocker*, *McM. Eq.* 488 ; *Glenn* v. *Conner*, *Harp. Eq.* 267 ; *Teague* v. *Dendy*, 2 *McC. Ch.* 209, and other authorities in the Circuit decree. Even after judgment had been rendered against the principal, the surety, when sued, in certain cases had the right to surcharge and falsify the account stated against the principal, upon the ground that he was not a party to the proceeding. To avoid this seeming double litigation, and for other reasons, it was subsequently held in the case of *Taylor* v. *Taylor*, 2 *Rich. Eq.* 128, that in a suit for an account against the principal the surety might, and for certain reasons should, be included as a party, so that he might defend himself, and if a recovery was had, that the decree might run against both in the first instance and avoid the necessity of a second examination of the same accounts. We understand that the case of Taylor *v.* Taylor established the practice in equity that upon bonds for the performance of covenants the surety may be included in the original suit for account against the principal ; but we know of no authority for going further. Phillips undertook that Fairlee should do certain things in regard to certain property. It does not appear that he failed to do his duty ; that can only appear by an account against his representatives. There may be some defence to that account, and the executors of Phillips have a right to be heard upon that subject. No breach of the bond has been made to appear in that conclusive manner which is necessary before the estate of the surety will be charged with any amount. It is premature to hold that any debt has been established against the estate of Phillips, as one of the sureties of Fairlee. We concur with the Circuit judge in ordering this claim to be recommitted.

*Second.* George M. Fairlee died in 1862, and the testator, Phillips, was appointed his successor as trustee of Mrs. McNeill, and entered into bond to C. D. Evans, Esq., commissioner, in 1863, which was substantially a copy of the bond of Fairlee. Jordan, trustee, claims that the executors must account for the actings and doings of Phillips as trustee, and that this account is a direct liability covered by his bond. In this respect this claim does differ from the one just considered. But an objection is made to it that there is, in fact, nothing due under this bond.

Phillips was appointed trustee in 1863, and never received anything from any source, except one item of $1800 in Confederate money. Soon after it was received he was conscripted into the Confederate service, and died in March, 1864, less than a year from the time he received the money. He committed no breach in receiving the money. He was entitled to a reasonable time to invest, and, in the midst of war, it was difficult, if not impossible, to invest Confederate money. He deposited the money, along with his own, with J. & J. D. Kirkpatrick, factors of good character in Charleston, who had been used by testator as his bankers, and, soon after testator's death, it was lost, not from any negligence or want of care on his part, or the subsequent failure of the Kirkpatricks, but for the reason that the currency itself became worthless. We do not know any principle of equity which requires that the estate should be charged with this money, whether the Kirkpatricks' exchanged it for Confederate bonds or not. In either case the result of loss would be the same. *Waller v. Cresswell*, 4 *S. C.* 353. If the testator had used the Confederate money in his own private business, the estate would be properly chargeable with *its value* at the time it was so received and so used. But there is no such allegation. The money, or Confederate bills, were never used in any way except to deposit them. This exception is overruled.

*Third.* Rose B. Wheeler entered into a marriage settlement with John F. Quinn, of which E. B. Wheeler was trustee; afterwards, Phillips, the testator, was appointed in his place, and gave bond, in 1860, to the commissioner, conditioned for the performance of his duties. Some of the property had been sold by order of the court, and the proceeds were paid to Phillips, the testator, in the year 1860. The Circuit decree states that it was "shown by his cash book and by the account of J. & J. D. Kirkpatrick, factors of Charleston, that the money was sent to them and deposited with them at seven per cent. interest, subject to his check, and in his own name; that it was not separated from his other deposits, but went to the general credit of his account. It is shown that for five years he had deposited all his own funds with these gentlemen, who were factors of the city of Charleston of high standing and credit, and that he had, in

that period, had large sums of money in their hands. It is also shown by the evidence that in 1863, Phillips was drafted into the second class of the reserves of the Confederate army ; that he made his will at that time, and that he required his bankers and factors to purchase for him $5000 of Confederate States bonds, which were found after his death among his personal assets. J. &. J. D. Kirkpatrick appeared to be solvent until 1868, when the executors of Phillips sued them and recovered a large judgment for money in their hands, but they went into bankruptcy and the entire debt was lost. Upon this state of facts, should the estate of Phillips be charged with this fund ?

This is not a case where the trustee has caused loss to his *cestui que trust* by calling in good and safe securities and accepting for them a depreciated currency. What he received was a payment on account of the trust. There is no breach of trust in receiving the money. We regard it established that he deposited the money with the Kirkpatricks, who were in good standing and continued so until after the testator's death. The question must be determined by the inquiry whether that deposit, under the circumstances, *was a prudent and judicious act.* The money was received January, 1860, and February, 1861, when the war was imminent. The investments required in such cases could not then be promptly or safely made, if they could be made at all. The trustee had a reasonable time to make the effort, and before that time expired, the country was in the midst of war. As was said by the court in the case of Waller *v.* Creswell, before cited : " A civil war was raging fierce and devastating, when or how to terminate, human foresight could, with no approach to certainty, determine. Even if successful to the Confederacy, which was waging it, years of deprivation, toil and industry must probably have been endured to repair the broken fortunes of its people. Can we then say the act in question was an incautious or imprudent one?" So we say here, was the deposit with the Kirkpatricks, under the circumstances, whether we regard them as acting bankers or merely as factors in good standing, *an incautious or imprudent act?* The times made ordinary investments impracticable, and what was he to do with the money ? Even after the event—looking back at this

distance of time—it is difficult to conceive how he could have acted more prudently. If he had placed the money in bank as was done in the case of *Fitzsimmons* v. *Fitzsimmons*, 1 *S. C.* 413, and, also, in the case of *Twitty* v. *Houser*, 7 *S. C.* 164, the failure would have come only sooner. The proof is that Phillips was a good business man, and he placed this money where he placed his own. We cannot resist the conclusion that this loss was one of the inevitable consequences of the war, and should not be shifted from the owner to the mere agent, who was without fault in causing the loss.

It is urged that the trustee mixed the money with his own. That would have charged him if he had used it in his own business and ventures, and that use had caused it loss. But that is not charged. His only use of it, mixed with his own, was the single act of deposit. It is said he did not keep it separate as trust property, and return it as such. As was said in the case of *Nance* v. *Nance*, 1 *S. C.* 209, "the failure to report the security is not in itself conclusive; it is only a circumstance to be considered among others."

This court concurs with the Circuit judge. The decree is affirmed and the appeal dismissed.

WILLARD, C. J., concurred.

McIVER, A. J. As I cannot concur in so much of the opinion of the majority of the court as exempts the estate of Phillips from liability for the money received by him as trustee for Mrs. Rose B. Quinn, deposited with the Kirkpatricks, and subsequently lost by their bankrupty, I propose to state, very briefly, the ground of my dissent.

It appears from the return of Phillips that much the larger part of this money was received by him in January, 1860, long before the war between the states commenced, and that the balance of it was received by him in February, 1861, several months before the actual commencement of hostilities. As trustee, it was was his duty to seek a proper investment for the fund as soon as practicable; and while he might have been justified in depositing this money for safe keeping where he was

in the habit of depositing his own money for a similar purpose, and allowing it to remain there for a reasonable time to enable him to look around for a suitable investment, I do not think he was justified in allowing the trust funds to remain on deposit for so great a length of time without some proof that he had made unsuccessful efforts to find a suitable investment.

As I concur fully upon the other points considered in the opinion of this court it is unnecessary for me to say anything as to them.

Appeal dismissed.